UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DENAE HENDLEY COSBY,

           Plaintiff,

-vs-                                                                                 Case No.  2:11-cv-264-FtM-SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

           Defendant.
_____/

## ORDER

This matter comes before the Court on Plaintiff's Memorandum of Law in Support of Claim for Disability Benefits (Doc. #21) filed on October 28, 2011. The Government filed is Memorandum in Support of the Commissioner's Decision (Doc. #22) on December 27, 2011.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case and issues the following Order.

## FACTS

### *Procedural History*

Plaintiff filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on May 6, 2008. (Tr. 142-48, 151-53). Those applications were denied. (Tr. 76-77, 80-81, 89-90, 92-93). Subsequently, Plaintiff had a hearing before Administrative Law Judge (ALJ) Ruben Rivera, Jr. on January 6, 2010. (Tr. 34-47). At the hearing,

Plaintiff appeared and testified. By decision dated January 26, 2010, the ALJ determined Plaintiff was not disabled. (Tr. 13-28). The Appeals Council denied Plaintiff's request for review (Tr. 1-5) and the Commissioner's final decision is now subject to judicial review pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed the instant Complaint on May 2, 2011 (Doc. #1).

### *Plaintiff's History*

The Plaintiff is a thirty-six (36) year-old female - thirty-three (33) years old at the time of the application - who has a twelfth (12th) grade education and has worked over the years as a certified nursing assistant as a private home health aide and with the mentally disabled, and a sales associate for department stores. (Tr. 40, 177). The Plaintiff alleges disability due to Acquired Immunodeficiency Syndrome (AIDS)/Human Immunodeficiency Virus (HIV), Depression, Obesity, Hypertension and Joint Pain. (Tr. 166, 325). The Plaintiff's problems became disabling to the extent she stopped working on May 4, 2008, due to symptoms from the alleged impairments. She was missing work and allegedly could no longer fulfill the demands of the job as a sales associate/customer service representative of walking and interacting with others, due to residuals of diarrhea, nightmares, difficulty concentrating, joint pain and numbness in the hands and legs. (Tr 40-45, 166). The Plaintiff was treated primarily by Dr. Marshall D'Souza at the McGregor Clinic, Dr. Kenneth A. Berdick, and a mental health counselor, Dr. Terri M. Erwin, Ph.D. (Tr. 244-67, 322-64, 425-70).

### *Administrative Law Judge's Decision*

On January 26, 2010, after reviewing all of the evidence and testimony, ALJ Ruben Rivera, Jr. issued a "Notice of Decision - Unfavorable." (Tr. 16-28). The ALJ found that Plaintiff had the

severe impairments of asymptomatic human immunodeficiency virus (HIV), depression, and obesity. (Tr. 18, Finding No. 3). The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments at 20 C.F.R. pt. 404, subpt. P, app. 1 (2011). (Tr. 19, Finding No. 4). Considering the record overall, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a range of medium work with some additional non-exertional mental limitations. (Tr. 20, Finding No. 5). With these limitations, the ALJ found Plaintiff could perform her past relevant work as patient transporter or sales attendant. (Tr. 27, Finding No. 6). As a result, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, since the alleged onset date of May 4, 2008, through the date of the decision. (Tr. 28, Finding No. 7).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a Plaintiff is disabled, the ALJ must follow the sequential inquiry described in the regulations (20 C.F.R. §§ 404.1520(a), 404.920(a)). The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

> Step 1. Is the Plaintiff engaged in substantial gainful activity? If the Plaintiff is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
>
> Step 2. Does the Plaintiff suffer from a severe impairment? If not, then the Plaintiff is not disabled. If there is a severe impairment, the ALJ moves on to step three.

Step 3. Does the Plaintiff's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the Plaintiff is disabled. If not, the next question must be resolved.

Step 4. Can the Plaintiff perform his or her former work? If the Plaintiff can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the Plaintiff is not disabled. If the Plaintiff cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206,

1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

**DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve (12) months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the plaintiff is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed three errors for which this case should be revered and remanded for further development or for payment. Specifically, Plaintiff alleges: (1) the ALJ failed to follow the opinion of treating sources; (2) the ALJ erred in finding that Plaintiff could perform past relevant work in the range of medium and light work; and (3) the ALJ failed to develop a full and fair record. The Plaintiff alleges that the ALJ's decision was not based on substantial evidence. The Court will consider each of these issues below.

*1. Whether the ALJ failed to follow the opinion of treating sources*

In this case, the Plaintiff argues that the ALJ disregarded the reports of examining physicians, which were indicative of inability to perform substantial gainful activity. Plaintiff asserts that the treating physician, Dr. Marshall D'Souza, opined that Plaintiff's condition impaired her ability to work. (Tr. 422-24). And that this opinion was shared by Dr. J.L. Bernard, J.D., Ph.D., who opined

that Plaintiff was probably unemployable and gave her a poor prognosis, as well as Dr. Henley. (Tr. 374-76, 467-70).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439-41; Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580 (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is

generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. <u>Morrison</u>, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

In his opinion, the ALJ gave weight to Dr. Ronald Kline and Dr. James Levasseur, Ph.D., and one of Dr. Erwin's opinions. (Tr. 25). The ALJ discounted part of Dr. Levasseur's opinion, the second of Dr. Erwin's opinions and Dr. D'Souza's medical statement. (Tr. 26). The Court notes though that the ALJ provided good explanation for the weight given to each source given the objective medical evidence available in the record.

The medical evidence shows that Plaintiff was diagnosed with HIV in 1990. (Tr. 246). Plaintiff did not seek treatment until August 2000. (Tr. 349). Plaintiff regularly receives treatment from the personnel at McGregor Clinic and Dr. Marshall D'Souza oversees her care. (Tr. 146-267, 300-17, 325-64, 404-21, 478-84). The treatment notes from McGregor Clinic show that Plaintiff was generally asymptomatic and doing well on her aniretroviral treatments, even though she was

sometimes noncompliant with her medications. (Tr. 255, 257, 259, 306, 406, 408). In April 2008, Plaintiff had not been to the clinic for treatment in two years and had a low CD4 count and percentage. (Tr. 254, 256, 258, 345). At that time, the examiner noted he discussed compliance and side effects with Plaintiff, but included no other note and continued Plaintiff on her medication. (Tr. 254). Plaintiff began taking the antiretroviral medication at that time and was subsequently noted to be doing well by June 2008 and feeling better, even though she was sometimes noncompliant with her medication. (Tr. 480, 306, 309). Plaintiff's lab results showed continued improvement in her condition. (Tr. 407, 409, 411, 416, 420; 481). Plaintiff received a note from the McGregor Clinic in July 2008 that indicated she should not work for 3-4 weeks. (Tr. 304). The ALJ noted that this note suggests that the physician did not believe Plaintiff was completely unable to work. (Tr. 24).

Dr. Kline, a state agency medical consultant, reviewed Plaintiff's medical history in October 2008. (Tr. 365-72). He opined that Plaintiff could perform medium work with no additional postural, manipulative, visual, communicative or environmental limitations. (Tr. 366-69).

With regard to Dr. D'Souza, he noted in his medical statement that per Plaintiff, she had dizziness, significant fatigue, numbness in her hands, occasional diarrhea, and nightmares/hallucinations. (Tr. 423). As the ALJ noted, the severity of these side effects are not supported by the medical evidence. (Tr. 21). For example, at Plaintiff's hospital visit in September 2009, Plaintiff denied conditions such as diarrhea, weakness, or vomiting. (Tr. 473). The treatment notes from McGregor Clinic also do not indicate the severity of these symptoms. (Tr. 325-48, 404-12). In September 2009, Dr. D'Souza opined that based on Plaintiff's statements, she could work for two hours a day, stand and walk for three hours total in an eight-hour day, sit for 15-20 minutes at a time and lift ten pounds occasionally and frequently. (Tr. 423). In the section on

psychological problems, Dr. D'Souza noted Dr. Erwin treated Plaintiff and that per Plaintiff's statements, she had moderate impairments in her ability to work with others, and a marked impairment in her ability to maintain attention and concentration, and an extreme impairment in her ability to understand, remember and carry out detailed instructions. (Tr. 423). Dr. D'Souza made a point of indicating on the form that the limitations included were "per pt" or per the patient's statements. (Tr. 423). The ALJ noted in his decision:

> In fact, Dr. D'Souza noted in his medical statement, which shall be discussed further below, that the claimant did not suffer from significant diarrhea or weakness, but rather had dizziness, significant fatigue, numbness in the hands, occasional diarrhea, and nightmares/hallucinations. The undersigned notes that his assessment is based on the claimant's self-report of the side effects, and is not based on objective clinical or laboratory findings.

(Tr. 24, internal citations omitted). Accordingly, the ALJ noted and considered Dr. D'Souza's medical opinion but noted that the opinion was not based on other objective medical evidence in the record.

With regard to Dr. Bernard, he was a consultive examiner who assessed Plaintiff in October 2008. (Tr. 374-75). He observed that Plaintiff's thought processes were rational, clear and logical, with unremarkable content. (Tr. 375). He also observed that Plaintiff's sensorium was clear, her judgment and insight were average, her estimated intellectual ability was average, and the testing score was not indicative of cognitive dysfunction, which the ALJ considered. (Tr. 22, 375). He diagnosed Plaintiff with major depressive disorder and opined that she was likely unemployable, but she could handle her own finances. (Tr. 275). The ALJ found, however, that Dr. Bernard's conclusions were contrary to the results of the mental status examination. (Tr. 23). And therefore afforded his conclusion little weight when compared to his objective assessment based on SSR 96-6p. Therefore, the ALJ considered the medical evidence offered by Dr. Bernard and the Plaintiff has

presented the Court with nothing to indicate that the ALJ's opinion was not based on substantial evidence in the record.

The ALJ considered other medical evidence, including that in November 2008, Dr. Levasseur, Ph.D., a state agency psychological consultant, reviewed Plaintiff's medical evidence. (Tr. 377-93). He opined that Plaintiff could understand and follow instructions, demonstrate a cooperative attitude, make basic work decisions, and adapt adequately to work environments. (Tr. 393). He opined that Plaintiff had a reduced ability to concentrate in her ability to complete complex tasks and a reduction in her social interaction ability that limited her to work with low social demands. (Tr. 393). The ALJ considered that Plaintiff's medication was helpful, but she also alleged some side effects. (Tr. 24, 41, 44).

The evidence regarding Plaintiff's mental condition shows that Plaintiff was treated by Terry Erwin, Ph.D., a licensed mental health counselor, who diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood. [6] (Tr. 210, 294-96). Progress notes from Dr. Erwin revealed that Plaintiff's mental status was generally normal, despite some reported nightmares, bad dreams and hallucinations. (Tr. 428-49). Dr. Erwin's treatment notes reflect that Plaintiff maintained relationships with family members and friends. (Tr. 426, 465). Plaintiff reported cooking Christmas dinner for her family, she participated in the birth of a friend's baby, she learned relaxation and meditation techniques, she learned sign language, she read life skills handouts and applied the techniques to her family. (Tr. 428-38, 441). Dr. Erwin also noted that Plaintiff was cooperative during examinations. (Tr. 437, 439, 441).

---

[6] Terry Erwin has her PhD and is a licensed "mental health counslor." The ALJ referred to her in his decision as Ms. Erwin. The Court will refer to her as Dr. Erwin in its Order, but will use Ms. Erwin when quoting from the ALJ's decision.

In November 2008, Dr. Erwin opined that Plaintiff did not suffer from a mental impairment that significantly interferes with her daily functioning. (Tr. 395). Then in September 2009, Dr. Erwin assessed that Plaintiff had no limitation in her ability to maintain personal appearance and hygiene and only mild limitations in her ability to accept instruction from and respond appropriately to criticism from supervisors, work in proximity to others without distracting them or exhibiting behavioral extremes, relate to the general public and maintain socially appropriate behavior, carry through instructions and complete tasks independently, respond appropriately to changes in the work setting, remember locations and workday procedures, be aware of normal hazards and take precautions, and behave in a predictably, reliably, and in an emotionally stable manner. (Tr. 467-70). Dr. Erwin opined that Plaintiff had moderate limitations in her ability to respond appropriately to co-workers or peers, perform work tasks in work day and work week at a consistent pace, process subjective information accurately, and use appropriate judgment, maintain attention and concentration for more than brief periods of time, and perform at production levels expected by most employers. (Tr. 469). The medical evidence was considered by the ALJ (Tr. 23, 25-26) when determining Plaintiff's RFC. The ALJ discussed the weight given to Dr. Erwin's opinions based on the other objective medical evidence:

> The undersigned has considered the opinions of Ms. Erwin, who is not an "acceptable medical source," . . . To the extent that Ms. Erwin's opinion indicated that the claimant had no mental impairment which significantly interfered with daily functioning and only had mild to moderate mental limitations in her ability to perform work-related activities, the undersigned accords her with some probative weight, as evidence by functional abilities discussed in Ms. Erwin's progress notes; however, her assessment regarding marked limitations in tolerating customary work pressures and stressful situations are unsupported by her own progress notes which showed that the claimant dealt with her own child's mental problems and her mother's addiction and attempt to obtain financial support from her through legal measures, and is therefore accorded with little weight (SSR 06-3p). (Tr. 26-27).

Treating sources are licensed physicians, licensed psychologist, licensed optometrists, licensed podiatrists and qualified speech pathologists used to establish language impairments. 20 C.F.R. § 404.1513(a). Dr. Erwin, is a licensed mental health counselor and therefore, not a treating source under the Regulations. As such, the ALJ considered her opinion and her treatment notes with the appropriate weight and consideration. (Tr. 26).

The Court agrees with Defendant that considering all of the medical evidence, the ALJ found by properly using the factors in the regulations, that Drs. Kline, Levasseur and Bernard's opinions were consistent with each other and with the other medical evidence and gave each great weight. (Tr. 26). As for Dr. Levasseur's opinion that Plaintiff must be in an environment that requires low social demands, the ALJ gave that particular limitation less weight because the medical evidence showed that Plaintiff was able to act cooperatively and appropriate with others (Tr. 26). The ALJ explained that the limitation on social demands was not supported by the medical evidence available and therefore did not give it great weight. (Tr. 26).

### *2. Whether the ALJ erred in finding that Plaintiff could perform past relevant work in the range of medium and light work*

Plaintiff argues that the ALJ improperly determined that the Plaintiff could perform work at the medium exertional level and return to her past relevant work as a sales attendant. (Tr. 27). Specifically, the Plaintiff argues that the ALJ's findings regarding the Plaintiff's RFC are not supported by the findings of any of the examining or treating sources and that the Plaintiff's subjective complaints are credible and expected.

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The

determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567).

> The ALJ made the following findings with respect to Plaintiff's RFC:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) as the claimant is able to lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, push/pull unlimitedly, and has no established postural, manipulative, visual, communicative, or environmental limitations. She is also able to understand, carry out, and remember simply instructions, use judgment in making work-related decisions, respond appropriately to supervision, co-workers and usual work situations, and, deal with changes in a routine work setting.
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 97-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> * * *
>
> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability

to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Plaintiff argues that the ALJ's RFC determination is improper because he improperly discredited the Plaintiff's complaints because she participated in activities such as the birth of her friend's baby on her birthday, cooked some food on one particular holiday, read literature recommended by her mental healthcare counselor in order to cope with stress, and she tries to take care of her children. (Tr. 23).

Where an ALJ decides not to credit a claimant's testimony about pain or other, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561-1562 (11th Cir. 1995); Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562

(quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

The Court agrees with Defendant that contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's credibility in evaluating the RFC. If the objective medical evidence does not confirm the severity of the alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated. See 20 C.F.R. §§ 404.1529, 416.929. Substantial evidence supports the ALJ's finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 21). In evaluating the intensity and persistence of the symptoms, the ALJ considered the factors listed in the regulations. As noted above the ALJ considered the medical evidence in comparison to Plaintiff' subjective complaints. (Tr. 23-27). The ALJ also considered Plaintiff's legal history, which included time for dealing drugs, petty theft, and stealing to make ends meet and the varying reports of her past to the ALJ at the hearing versus what she told various examiners. (Tr. 25, 45-46, 375). Plaintiff's inconsistent statements do provide a reason to question her credibility.

The ALJ also considered Plaintiff's activities of daily living in evaluating her credibility. (Tr. 23-25). While the performance of everyday tasks cannot be used to make a determination that the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. *See* Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the

contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). Dr. Erwin's treatment notes reflect some of Plaintiff's activities. (Tr. 435-43). The ALJ also observed that Plaintiff behaved appropriately during the hearing. (Tr. 23). The ALJ considered that Plaintiff considered herself able to work because she applied for a part time job after her alleged onset date, even though at the hearing she alleged she had not attempted to work. (Tr. 39, 442-46). Contrary to Plaintiff's argument, the ALJ considered her activities not to justify a finding of medium work or to reject one of the treating physicians, but to show that Plaintiff was not as limited as she alleged in her subjective complaints. (Tr. 23-25).

During the third step of the sequential evaluation, the ALJ considered Plaintiff's limitations in three categories. (Tr. 19). The ALJ found that Plaintiff was mildly limited in activities of daily living and moderately limited in social functioning and her ability to concentrate, persist or keep pace. (Tr. 19). The ALJ then reflected the degree of limitation in each category in the functional limitations included in the RFC. (Tr. 20). Contrary to Plaintiff's argument, those limitations are consistent with the functional limitations included in the RFC that Plaintiff could perform simple work, respond appropriately to supervision and deal with changes in routine. (Tr. 20). The ALJ explained that despite these moderate limitations, Plaintiff is able to work as evidenced by her daily activities and the medical evidence. (Tr. 23).

Considering all of Plaintiff's activities and the medical evidence compared with her subjective complaints, the ALJ properly found that Plaintiff's complaints were not entirely credible as to the severity and limiting effects. Substantial evidence supports the ALJ's RFC finding that

Plaintiff could perform unskilled medium work.

### *3. Whether the ALJ failed to develop a full and fair record*

Plaintiff argues that the ALJ failed to develop a full and fair record because he did not elicit the testimony of a Vocational Expert (VE). Defendant argues that this was not required. After correctly finding that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ assessed Plaintiff's RFC to determine if she could perform her past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f), 416.920(a)(4)(iv), (e), (f). Given Plaintiff's RFC for a range of unskilled medium work and the demands of her past relevant work, the ALJ found that Plaintiff could perform her past relevant work as a patient transporter or sales attendant either as previously performed or as performed in the national economy. (Tr. 27-28). In finding that Plaintiff could perform her past relevant work as a patient transporter and a sales attendant, the ALJ properly relied on the Dictionary of Occupational Titles (DOT) (Tr. 27-28). See 20 C.F.R. §§ 404.1560(b)(2), 416.9601(b)(2). As the ALJ noted, both jobs were unskilled, the transporter job required medium exertion, and the sales attendant job required light exertion as generally performed in the national economy. (Tr. 28). See U.S. Dep't of Labor, DOT §§ 355.677-014, 1991 WL 672947; DOT § 299.677-010, 1991 WL 672643. The ALJ found that Plaintiff's RFC did not preclude the performance of her past relevant work.

The ALJ has a duty to fully and fairly develop the record. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988); Cowart v. Schweiker, 662 F.2d 731, 735-36 (11th Cir. 1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right. 42 U.S.C.§ 406; Cowart, 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has

waived the right to retained counsel, and even if the claimant is represented by counsel. Id. at 735-736.  Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995)(citing Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982)). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Cowart, 662 F.2d at 735 (citations omitted).

However, while it is well established that the ALJ has a duty to develop a full and fair record, that duty only extends to the record for the twelve (12) months preceding the filing of an application for benefits. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  Furthermore, the ALJ's duty to develop the record does not relieve the Plaintiff of his burden of proving that he is disabled, and consequently, the Plaintiff is still responsible for producing evidence in support of his claim. Id. (citing 20 C.F.R. § 416.912(c)).

Plaintiff argues the ALJ should have used the services of a VE because the ALJ included nonexertional limitations. (Pl.'s Br. at 9-10).  However, when an ALJ finds that a claimant can perform her past relevant work, testimony from a VE is not necessary. See Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990).  Therefore, remand on this issue is not appropriate.

Accordingly, it is now

**ORDERED:**

The decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter judgment accordingly and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of March, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record